# Graham *v.* Carnegie Steel Company, Appellant.

*Deed—Reformation of deed—Mistake—Mutual mistake—Evidence.*

In order to reform a deed on the ground of mistake, it must clearly appear by the testimony of witnesses who distinctly remember the facts that a mistake was made and that the writing does not express the agreement. The testimony must be clear, precise and indubitable, and of such weight and directness as to carry conviction to the mind.

On a bill in equity to reform a deed, reserving a right of way, it was averred that by mutual mistake of the parties the words "nine degrees" were used instead of the words "nine per cent" in describing the grade of the way. The testimony established nothing except that the agents for the grantor were mistaken as to what a nine degree grade was, not that there was a mutual mistake in making the deed. *Held*, that complainants were not entitled to the relief sought.

Argued Nov. 2, 1906. Appeal, No. 180, Oct. T., 1906, by defendant, from decree of C. P. No. 2, Allegheny Co., April Term, 1904, No. 375, on bill in equity in case of Harry J. Graham v. Carnegie Steel Company, a corporation, Union Railroad Company, Monongahela Southern Railroad Company and Carnegie Steel Company, Limited. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity to reform a deed.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree reforming the deed.

*Samuel McClay,* of *Reed, Smith, Shaw & Beal,* for appellant.—In order to reform this deed, it was necessary that the appellee prove his contention by testimony, which was: "Clear, precise and indubitable; carrying conviction to the mind of the Chancellor, and that the witnesses remember the facts distinctly, truly and accurately:" Cullmans et al. v. Lindsay et al., 114 Pa. 166; Edmond's App., 59 Pa. 220; Boyertown Nat. Bank v. Hartman, 147 Pa. 558; Bunse v. Agee, 47 Mo. 270; Fulton v. Colwell, 50 C. C. A. 537 (112 Fed. Repr. 831); Hollenback's App., 121 Pa. 322.

*John M. Freeman*, with him *D. T. Watson* and *Chantler*, *McGill & McClung*, for appellee.—The law requires that evidence to reform a written instrument on the ground of mistake must be clear, precise and indubitable, and we think the evidence in this case clearly comes up to that standard: Highlands v. R. R. Co., 209 Pa. 286; White v. Black, 14 Pa. Superior Ct. 459.

OPINION BY MR. JUSTICE FELL, January 7, 1907:

The bill filed in this case was to compel the removal of obstructions from the plaintiff's right of way over the land of the defendant. An amendment was allowed in which it was averred that by mutual mistake of the parties to the deed reserving the right of way, the words "nine degrees" were used instead of the words "nine per cent" in describing the grade of the way, and there was a prayer added for the reformation of the deed. In 1896 Mary Oliver conveyed to the Carnegie Steel Company, Limited, one of the defendants, a tract of about thirty-nine acres of land, reserving the right to a private road over the land granted, from a public street to other land of the grantor which was entirely surrounded by private property and had no other outlet. She also reserved the right to grant rights of way over the street, either at or above grade, to any electric railway. Her grantee was "however, to have the right to change the grade of said road by filling or otherwise so long as said change of grade shall not prevent the ordinary use of said road or cause the grade of the same or any portion thereof to exceed nine degrees."

It is averred in the bill that the company's object in purchasing the land was to secure a place of deposit for slag and refuse matter from its furnaces; that it had made large deposits on the right of way, which had been so placed as to obstruct and prevent its use; that in some places there are deep depressions and in others there are embankments which extend above the maximum grade permitted by the stipulation in the deed. The decree entered after final hearing directs the reformation of the deed and the removal of slag and refuse deposited in excess of a nine per cent grade. This decree is based on the findings that the right of way is appurtenant to the complainant's land, and that the real intention and agree-

ment of the parties to the deed was that the grantee should have the right to change the grade of the road, not to exceed nine feet in one hundred, and that the words "nine degrees" were inserted in the deed by mutual mistake.

We have the bare findings on which the decree rests without the advantage of any discussion of them, and are left to search the record for testimony to support them. The conveyance was made in pursuance of a written agreement executed four months before the deed, in which the words "nine degrees" were used to indicate the grade. The deed was delivered October 10, 1896; the deposit of slag was continuous and almost daily from 1898 to 1903, and until the filing of the amendment to the bill in 1904 there was no suggestion of a mistake. The negotiations for the purchase of the property extended over a period of six months. The agreement and the deed were both drawn by the grantor's counsel, who, while unable to recall what instructions were given him in regard to the grade, testified that all the instructions he received were from the grantor's sons, William and George Oliver, who represented her. The plaintiff's case rested wholly on the testimony of these two men. Neither knew at the time of the agreement thật there was a difference between a nine degree and a nine per cent grade, nor did either remember that there was a written agreement of sale, though both signed it. Their testimony is vague and indistinct. They could not recall what was said in relation to the grade, but only that there was an understanding that there was to be a reasonably easy grade of about nine or ten feet to the hundred. One of these witnesses is directly contradicted by a witness who was present during a part of the negotiations, who testified that he explained to him that a nine degree grade meant a rise of nearly sixteen feet in one hundred and that the road would be of little practical use. The company was represented in the negotiations by its chief engineer and by its vice president, who was in charge of its real estate department. They testified that no mistake had been made in naming nine degrees as the grade agreed upon. Both of these witnesses knew what a nine degree grade was and how it would affect the property for the use for which it was bought. The vice president of the company, whose duty it was to affect the purchase, testified clearly

and distinctly that it was agreed that the grade should be nine degrees; that he understood how a road of this grade would affect the property; that he consented to the reservation of the road at this grade as a concession because it would not be a serious objection, and that he would not have agreed to a nine per cent grade because a road of that grade would have involved a very heavy expenditure.

In order to reform a deed on the ground of mistake, it must clearly appear by the testimony of witnesses who distinctly remember the facts that a mistake was made and that the writing does not express the agreement. The testimony must be clear, precise and indubitable, and of such weight and directness as to carry conviction to the mind : Edmond's Appeal, 59 Pa. 220; Boyertown Nat. Bank v. Hartman, 147 Pa. 558; Highlands v. Railroad Co., 209 Pa. 286. The testimony on which the finding of the court is based fell far short of this standard. It established nothing except that the agents of the grantor were mistaken as to what a nine degree grade was, not that there was a mutual mistake. The mistake shown was a mistake on their part in making the bargain, not a mutual mistake in making the deed.

The decree reforming the deed is reversed at the cost of the appellee. We do not dismiss the bill because the appellant may be required to make the road fit for ordinary use at the grade named in the deed.